<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                              :       Chapter 7

*In re*:                                    :

                                    :       Case No. 18-36301   (CGM)

      Ronald James Stroh, Jr.,        :

                                    :

                         *Debtor.*     :

                                    :
------------------------------------------------------------X
                                    :       Adversary Proceeding

      McCormick 105 LLC,          :

                        *Plaintiff,*   :       Case No. 20-09000 (CGM)

                                    :

                v.                    :

                                    :

      Ronald James Stroh, Jr.,        :

                                    :

                      *Defendant.*  :

                                    :
------------------------------------------------------------X

### MEMORANDUM DECISION [GRANTING DEFENDANT'S MOTION TO DISMISS]

<u>**A P P E A R A N C E S**</u>**:**

Jeffrey S. Greene, *Attorney for the Plaintiff*

Rick S. Cowle, *Attorney for the Defendant*

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

<u>**Jurisdiction**</u>

      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §

157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated

January 31, 2012. This is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(J)

(matters concerning the administration of the estate and objections to discharge).

## **Background**

Ronald James Stroh, Jr. ("Defendant") filed a Chapter 13 petition on August 3, 2018 and requested Loss Mitigation on August 7, 2018. Def.'s Mem. 6-7, ECF No. 5. On August 23, 2018, McCormick 105, LLC ("Plaintiff") objected to the Loss Mitigation Request. *Id.* The Court granted the Defendant's request and the parties entered Loss Mitigation on November 8, 2018. *Id.* After the Defendant learned he did not qualify for a loan modification on his mortgage, he began to pursue a short sale. *Id.* On March 15, 2019, the Defendant filed a Motion to Employ Broker for the short sale. Def.'s Mot. To Dismiss Mem., ¶ 7, ECF No. 5-3. By April 2, 2019, the Defendant cancelled his homeowner's insurance. Pl.'s Compl. ¶ 24. ECF No. 1. On May 28, 2019, the Defendant vacated the property in question. Pl.'s Compl. ¶ 23. ECF No. 1.

The Plaintiff requested to terminate Loss Mitigation and did not appear to a June 11, 2019 Loss Mitigation Conference to address the issue. Def.'s Mot. To Dismiss Mem., at 8, ECF No. 5-3. On June 21, 2019, the Plaintiff moved for Relief from the Stay. *Id.* In September of 2019, the Defendant decided to stop pursuing a short sale. *Id.* On September 24, 2019, this Court terminated Loss Mitigation. The Defendant voluntarily converted his petition to Chapter 7 on September 26, 2019. Def.'s Mot. To Dismiss. Ex. B, 12, ECF No. 5-5. On October 1, 2019, the Defendant stated he intended to surrender the house. Pl.'s Compl. ¶ 20, ECF No. 1. A foreclosure sale was held on December 17, 2019, pursuant to the November 2015 state court judgement, and the Plaintiff now owns the Defendant's former house. Pl.'s Compl. ¶¶ 6-7, ECF No. 1.

On January 7, 2020, the Plaintiff initiated the current adversary proceeding by requesting this Court to dismiss the Defendant's Chapter 7 case. The Plaintiff alleges three causes of action under a § 707(b)(3)(B) totality of the circumstances demonstration of abuse, a § 707(b)(3)(A) bad faith filing, and a § 707(b)(2) presumption of abuse. *Id.* at ¶¶ 44, 52, 55. The Defendant

moves to dismiss the Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) and

Federal Rule of Bankruptcy Procedure 7012 for failure to state a claim for which relief can be

granted, bar the Plaintiff from amending its complaint, and request damages. Def.'s Mot. To

Dismiss 12, 32, ECF No. 5.

### Discussion

Pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). Courts "must accept as true all facts alleged in the complaint and draw all

reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 503 B.R. 804, 810 (B.A.P.

9th Cir. 2014). Only facts stated in the complaint must be accepted as true, not legal conclusions.

*Iqbal*, 556 U.S. at 678. For claims to be plausible, the facts accepted as true must allow "the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.*

### I.   Plaintiff's § 707(b)(3)(B) Cause of Action

The Plaintiff alleges that the Defendant's Chapter 7 discharge should be dismissed under

the § 707(b)(3)(B) totality of the circumstances test. The Plaintiff's basis for this is that the

Defendant has a "formidable" household income and as he is "no longer burdened with

oppressive secured debt payments which consumes approximately 46% of his (pre-tax) income,

the Defendant surely should have available consequential monthly income to fund a bankruptcy

repayment plan." Pl.'s Compl. ¶ 43, ECF No. 1.

Section 707(b)(3)(B) provides that in determining abuse in a debtor's Chapter 7 relief, the

court can consider whether, "the totality of the circumstances…of the debtor's financial situation

demonstrates abuse." 11 U.S.C. §§ 707(b)(3), 707(b)(3)(B). Historically, a "totality of the

circumstances" test involves eschewing a bright-line rule and looking at "the entire situation" in

the case at hand. *Totality-of-the-Circumstances Test*, BLACK'S LAW DICTIONARY (11th ed. 2019).

This remains true regarding the § 707(b)(3)(B) test.

The Second Circuit has adopted a multi-factor totality of the circumstances approach to §

707(b)(3)(B). *Kornfield v. Schwartz (In re Kornfield)*, 164 F.3d 778 (2d Cir. 1999). In *In re

Kornfield*, the Second Circuit approved the Western District of New York's approach to §

707(b)(3)(B). *Id.* The Western District applied the totality of the circumstances test there as:

> a two-part inquiry which considers the debtor's ability to pay as the primary
> factor and then weighs other circumstances to determine whether there are any
> mitigating factors warranting discharge or any aggravating factors warranting
> dismissal of the chapter 7 petition.

*In re Aiello*, 284 B.R.756, 760 (Bankr. E.D.N.Y. 2002) (citing *In re Carlton*, 211 B.R. 468, 477-

78 (Bankr. W.D.N.Y. 1997)). The *Carlton* court listed fifteen equitable "mitigating or

aggravating factors" that could contribute to the second part of the inquiry. *Aiello*, 284 B.R. at

760 (quoting *Carlton*, 211 B.R. at 478). It is important to note that these factors are applicable to

the § 707(b)(3)(B) test, as opposed to the § 707(a)'s *In re O'Brien* factors cited by the

Defendant, which are inapplicable here. Def.'s Mem. 15, ECF No. 5 (quoting *In re O'Brien*, 328

B.R. 669, 675 (Bankr. W.D.N.Y. 2005)).

The debtor's ability to pay is the main factor, and under the totality of the circumstances

test "[t]he mere fact that a debtor has a relatively high income should not be sufficient to warrant

a finding of abuse." 6 COLLIER ON BANKRUPTCY 707.04 (16th ed. 2020). To do so "would be to

invent a new means test, different than the uniform standard enacted by Congress." *Id.*

The Plaintiff maintains that the totality of the circumstances test is "a standalone '*per se*'

test" and that additional factors aside from ability to pay are not required. Pl's. Mem. 19, ECF

No. 7. To support this assertion, the Plaintiff cites an Eastern District of New York decision, *In re Perelman*. Despite the Plaintiff's near-verbatim copying of *Perelman* in his complaint, aside from a change in percentage ("No longer burdened with oppressive secured debt payments which consumes approximately 68% of his (pre-tax) income, the Debtor surely should have available consequential monthly income to fund a bankruptcy repayment plan." *In re Perelman*, 419 B.R. 168, 178 (Bankr. E.D.N.Y. 2009)), the Plaintiff misconstrues *Perelman* and neglects the Second Circuit.

When the Second Circuit affirmed the Western District's decision it "rejected the *per se* test sought by the U.S. Trustee and applied a totality of the circumstances test that was well within the mainstream of analysis used by other circuits." *In re Kornfield*, 164 F.3d 778, 783 (2d Cir. 1999). In *Perelman*, the court dismissed a Chapter 7 case partly for the debtor's ability to pay due to "significantly above-median income" and a "major reduction to expenses through the surrender of encumbered properties." The *Perelman* court considered other factors in its dismissal other than an ability to pay: namely, the debtor's "stable employment," "absence of dependants," and failure "to present any evidence of mitigating or aggravating circumstances." *Perelman*, 419 B.R. at 178. The *Perelman* decision represents an archetypical analysis under the totality of the circumstances test, not a *per se* test advocated for by the Plaintiff.

Accepting all of the Plaintiff's alleged facts as true, the Plaintiff has not pled enough facts under the *Iqbal* plausibility standard to survive a 12(b)(6) motion to dismiss. The Plaintiff states that the Defendant has a "formidable" income, no longer has burdensome "secured debt payments," and "surely should have available consequential monthly income to fund a bankruptcy repayment plan." Pl.'s Compl. ¶¶ 19, 43, ECF No. 1. The Plaintiff's conclusion here fails to consider that, absent the mortgage payments on the Defendant's former house, the

Defendant now must make three-thousand-dollar monthly rental payments for his family's current home. Def.'s Mot. To Dismiss Mem., 3–4, ECF No. 5-3; Pl.'s Compl., Ex. D at 16, ECF No. 1-4. Given that § 707(b)(3)(B) considers more than income and ability to pay, the Plaintiff failed to plead sufficient facts to show plausible abuse under the Second Circuit's interpretation of the totality of the circumstances test.

## II. Plaintiff's Cause of Action under 11 U.S.C. § 707(b)(3)(A)

The Plaintiff alleges that the Defendant's discharge should be dismissed under § 707(b)(3)(A)'s bad faith standard. Section 707(b)(3)(A) permits dismissal dependent on "whether the debtor filed the petition in bad faith…" 11 U.S.C. § 707(b)(3)(A). "Under § 707(b)(3)(A), a bad faith filing is defined as the act of submitting a bankruptcy petition that is inconsistent with the purposes of the Bankruptcy Code or is an *abuse* of the bankruptcy system (that is, by not being filed in good faith)." *In re Campbell*, No. 11-70038-AST, 2012 WL 360031, at *5 (Bankr. E.D.N.Y. Feb. 1, 2012) (quoting *In re Hornung*, 425 B.R. 242, 248 (Bankr. M.D.N.C. 2010)) (emphasis added). In examining a case under § 707(b)(3)(B), "a dishonest or nefarious act may be sufficient to prove bad faith." *Campbell*, 2012 WL 360031, at *5 (quoting *In re Webb*, 447 B.R. 821, 824 (Bankr. N.D. Ohio 2010)). Bad faith must "exist at the time of commencing of the bankruptcy and it is the debtor's intent and purpose at that time which is the subject of the analysis." *In re Hageney*, 422 B.R. 254, 260 (Bankr. E.D. Wash. 2009).

Attention should be drawn to the specific language of § 707(b)(3)(A). Dismissal under this section depends on "whether the debtor *filed* the petition in bad faith." 11 U.S.C. § 707(b)(3)(A) (emphasis added). The Defendant did not file the instant case as a Chapter 7, he converted the case from a Chapter 13. Section 348(a) provides that conversion of a case from

one chapter to another "does not effect a change in the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a).

Courts have historically upheld the plain-language interpretation of § 348(a) that conversion does not alter the petition date of filing. *See In re Cyrilla*, No. 18-20017-GLT, 2020 WL 96680, at *2 (Bankr. W.D. Pa. Jan. 8, 2020); *see also Matter of Erchenbrecher*, 85 B.R. 42 (Bankr. N.D. Ohio 1988). The Code affords exceptions to this rule for other code provisions, not for § 707(b)(3)(A). *See* 11 U.S.C. § 348(b). For a bad faith dismissal under § 707(b)(3)(A) in a converted case, the debtor must have filed the original case, prior to conversion, in bad faith. As all the Plaintiff's allegations of bad faith arose after the Defendant's original Chapter 13 filing, the Plaintiff did not plead a valid cause of action under § 707(b)(3)(A).

Even had § 348(a) not applied, the Plaintiff's allegations of bad faith are not facially sufficient for a dismissal under § 707(b)(3)(A). The Plaintiff's § 707(b)(3)(A) cause of action consists of three allegations of bad faith. One, that "[t]he Defendant lacked any genuine intent to engage in the Court Loss Mitigation Procedure of a Short Sale." Pl.'s Compl. ¶ 47. ECF No. 1. Two, that "[t]he Defendant knowingly and wrongfully abandoned the subject Property and cancelled hazard insurance exposing the Plaintiff's interest to harm." *Id.* at ¶ 48. Three, that "[t]he Defendant knowingly and fraudulently, in connection with this case made false oaths or accounts." *Id.* at ¶ 49. The Plaintiff alleges that these "false oaths or accounts" consist of the lease security deposit in Amended Schedule A/B and C, the Schedule J expenses, and "false or misleading testimony" at the § 341 Meeting. *Id.* at ¶¶ 33–5, 51.

<u>The Short Sale</u>

The Plaintiff alleges that the Defendant engaged in bad faith by pursuing a short sale through Loss Mitigation without "any genuine intent" to do so. Pl.'s Compl. ¶ 47. ECF No. 1.

The Plaintiff claims that the Defendant engaged in the short sale in bad faith by moving his family to a new property during the process.

*In re Roberts* exemplifies a set of facts where a debtor did engage in a short sale in bad faith. In *Roberts*, the debtors filed for Chapter 7 and claimed the equity in their house as exempt. *See In re Roberts*, 527 B.R. 461, 462 (Bankr. N.D. Fla. 2015). The debtors pursued a short sale of the house, which was approved by SunTrust, the secured creditor holding the house's mortgage. *See id.* at 471. After the closing the creditor forgave the debtors' remaining $ 205,570.97 indebtedness. *Id.* The court found that before pursuing the short sale, the debtors liquidated their non-exempt assets and claimed these assets as the exempt equity in their house on Schedule C in order to build a new home. *Id.* at 462, 476. The Debtors requested the initiation of the short sale from the creditor six months after having moved out of the first house into the second. *Id.* at 468. As the court summarized,

> At no time did the Debtors disclose to SunTrust that during the months between their first inquiry about a short sale and the short sale closing they were spending, or had spent, more than $385,000 building a new home just down the street. Nor did the Debtors disclose to SunTrust until the day of closing the short sale that they had moved out of the short sale property and into a home worth in excess of $400,000.

*Id.* The court found that this conduct by the debtors during the short sale was intended to "hinder, delay, or defraud a creditor." *Roberts* 527 B.R. at 473. Though the action in *Roberts* was brought under 11 U.S.C. § 522(o)(4) rather than § 707(b)(3)(A), the facts of *Roberts* show what would be needed to sufficiently allege a bad faith intent to pursue a short sale in a Chapter 7.

The Plaintiff supports its allegations of bad faith related to the short sale and surrender of the property based on the fact that upon vacating the property, it was technically no longer the Defendant's primary residence. Pl.'s Compl. ¶ 47. ECF No. 1.

Another look at *Roberts* illustrates the difference between it and the instant case. In *Roberts*, the debtors vacated the property before initiating the short sale procedure, and then moved into a new house of their own construction. Here, the Defendant moved to employ a broker for the short sale on March 15, and vacated the property by May 28. Pl.'s Compl. ¶ 23. ECF No. 1. Unlike in *Roberts*, where the debtors deceived the creditor about the nature of their primary residence, here, the Plaintiff knew that the property in question was the primary residence at the time short sale efforts began. The Plaintiff knew that the Defendant had moved out, as notified by the broker. Pl.'s Compl. ¶ 23. ECF No. 1.

In *Roberts*, the creditor did not know there was another residence and that the debtors had lived there the entire time until after closing. *Roberts*, 527 B.R. at 468. There, the debtors vacated the short sale property to move into a house constructed with the money they hid from creditors. *Id.* at 462, 476. Here, the Defendant moved out of the property into a rented, not owned, property. Pl.'s Compl. ¶ 22. ECF No. 1. The Plaintiff offers no facts that, if taken as true, tend to show that the Defendant vacated the property in order to frustrate the Plaintiff and the short sale effort. Pl.'s Compl. ¶¶ 25, 48, ECF No. 1.

Surrender of the Property

The Plaintiff's allegations regarding the short sale closely mirror its allegations that the Defendant acted in bad faith regarding the surrender of the property. The Plaintiff alleges that the Defendant's Statement of Intention to surrender the property was "untrue, deceitful, and made in bad faith" as the Defendant moved into another property, cancelled his homeowner's insurance, and notified the court late of his change of address. Pl.'s Compl. ¶ 20, 22, 24–5, ECF No. 1. As

dealt with above, absent more information, there are no allegations in the complaint

demonstrating that the Defendant abandoned the property in bad faith rather than to find a new

home for his family in anticipation of the short sale.

The Defendant cancelled his homeowner's insurance, and while it might have exposed

the Plaintiff to loss on the property, nothing in the complaint supports the Defendant's

conclusory statement that this was done to "purposefully expose" the Plaintiff to loss. *Id.* at ¶ 25.

Though the Defendant notified the court late about his change of address, he filed the change of

address on the same day as the conversion to a Chapter 7. Def.'s Mot. To Dismiss. Ex. B, 12,

ECF No. 5-5. The Court was then aware of the residential situation going into the case

conversion. The Plaintiff, through information received by the real estate broker, knew of the

Defendant's move well before the conversion. Pl.'s Compl. ¶ 23, ECF No. 1.

Taken together, these allegations of the Plaintiff do not show a plausible claim that the

Defendant acted during the surrender in bad faith at the time of filing which resulted in a

substantial abuse of the bankruptcy system.

<u>"False Oaths or Accounts"</u>

The Security Deposit

Turning to the allegations that the Defendant made "false oaths or accounts," the

Plaintiff claims that the Defendant did not initially include his lease security deposit in

his Schedules and that the Amended Schedules reflect a three-thousand-dollar security

deposit as opposed to a six-thousand-dollar deposit. Pl.'s Compl. ¶ 33–4. ECF No. 1.

Accepting these allegations as true, they do not rise to the level of being "inconsistent

with the purposes of the Bankruptcy Code" or "an *abuse* of the bankruptcy system."

*Campbell*, 2012 WL 360031, at *5. The Plaintiff did not plead sufficient facts to show

that these mistakes on the schedule constituted knowing bad faith, rather than oversights. Pl.'s Compl. ¶¶ 33–4, 49–50, ECF No. 1.

On cross-examination at the § 341 Meeting, the Plaintiff's counsel asked the Defendant about the amount of his security deposit and whether he listed it on his petition. Pl.'s Decl. in Opp'n, Ex. A at 10 ¶¶ 22–25, ECF No. 6. The Defendant responded that he thought it was six thousand dollars and that he did not know whether he included it on the petition. *Id.* Defendant's counsel responded that they can amend the petition to include the deposit should it not already be there. *Id.* at 11 ¶ 1. The Chapter 7 trustee noted the absence of the security deposit on the Defendant's Schedule A/B. He commented that, as the Defendant took the federal exemption, the deposit on the schedule would be exempt when amended. *Id.* at 15 ¶¶ 12–16. Absent additional facts, this does not plausibly suggest that the Defendant "knowingly failed to disclose his lease security deposit." Pl.'s Compl. ¶ 33, ECF No. 1.

The Amended Schedule A/B includes a security deposit of three thousand dollars as opposed to the six thousand dollars the Defendant said he thought it was at the § 341 Meeting. *Id.* at 34. The Defendant argues that while the security deposit is six thousand dollars, the deposit value is split fifty percent between him and his wife, resulting in the three-thousand-dollar deposit listed on the amended schedules. Def.'s Mot. To Dismiss Mem., 20, ECF No. 5-3. Accepting the Plaintiff's allegation as true, that the Defendant's deposit value is six thousand dollars, the complaint does not show or allege how the filing of the amended schedule was knowingly false. The Plaintiff also does not show how the misstated deposit rises to "an *abuse* of the bankruptcy system." *Campbell*, 2012 WL 360031, at *5. As the Trustee observed at the § 341 Meeting, where the Defendant said he thought the deposit was six thousand dollars, the deposit would be exempt. Pl.'s Decl. in Opp'n, Ex. A at 15 ¶¶ 12–16. The Plaintiff fails to plead how the

difference in deposit amount, which would be exempt under either value, is an abuse warranting dismissal of a case. Pl.'s Compl. ¶¶ 33–4. ECF No. 1.

Schedule J

The Plaintiff alleges that the Defendant's statements on his Schedule J are false, specifically under Part 2 – Ongoing Expenses, Item 4b – Renter's Insurance and Item 12 – Transportation. Pl.'s Compl. ¶¶ 34–5, ECF No. 1. In its complaint, all that the Plaintiff alleges is that "[u]pon information and belief, the Defendant's filed Schedule J, Expenses is knowingly false (i.e. part 2, 4b, and 12)." *Id.* at ¶ 35. Absent anything else to be said, solely a statement that "[u]pon information and belief" the items on the schedule, which is a sworn statement by the Defendant, are "knowingly false," is nothing more than "legal conclusions masquerading as factual allegations." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)); Pl.'s Compl. ¶ 35, ECF No. 1.

The Plaintiff argues that the Item 4b – Renter's Insurance amount listed on the Schedule is false. Pl.'s Compl. ¶ 35, ECF No. 1. The Plaintiff bases this claim on the § 341 Meeting testimony where the Defendant responded that he was unsure of the insurance amount and that his wife knew. Pl.'s Decl. in Opp'n ¶ 24, ECF No. 6. The Plaintiff also claims that the Item 12 – Transportation amount included on the Schedule and testified to at the § 341 Meeting is "seemingly high." *Id.* at ¶ 23. The Plaintiff finds fault in the Defendant's statement that the transportation expenses were an estimate while he understood that the information to be provided at the § 341 Meeting should be accurate. *Id.* The Plaintiff offers no facts that, accepted as true, tend to plausibly show that the Defendant falsely stated the renter's insurance on Schedule J. Pl.'s Compl. ¶ 35, ECF No. 1.

The observation that the Defendant claimed that his transportation expenses were an estimate does not support a showing of false testimony. Part 2 of Schedule J itself instructs one to "Estimate Your Ongoing Monthly Expenses." Amended Schedules, at 16 – 17, Pet. 18-36301-cgm, ECF No. 80. Based on the filed Schedule J, removing the Items 4b and 12 expenses ($165 and $427.50, respectively) in totality would still leave the Defendant with a negative monthly income of -$709.75. *Id.* The Defendant would still be incapable of funding a Chapter 13 plan. The Plaintiff failed to show that any of the alleged "false oaths and accounts" were indeed plausibly false, and if so that they rose to "an *abuse* of the bankruptcy system." *Campbell*, 2012 WL 360031, at *5; Pl.'s Compl. ¶ 35, ECF No. 1.

§ 341 Meeting Testimony

The Plaintiff may argue that its allegation of "false or misleading testimony" at the § 341 Hearing is not a separate allegation and only refers to the issues of the security deposit and Schedule J. If not, this one allegation is the only time the Plaintiff mentions it in its complaint. In the complaint, the Plaintiff never states what, if any, other statements from the Defendant's Testimony it considers to be false or misleading. This statement of "false or misleading" testimony is a legal conclusion without any factual support. As pled, the Plaintiff has alleged no facts that would allow the court to draw the reasonable inference that the Defendant did in fact give false testimony. *Iqbal*, 556 U.S. at 678, Pl.'s Compl., ¶ 51, ECF No. 1.

The Plaintiff did not plead a valid cause of action under § 707(b)(3)(A) as the filing is required to be in bad faith, and per § 348(a) the filing date in a converted case is the same as the original case. 11 U.S.C. § 348(a). The Plaintiff did not plead any bad faith, or any intent to act in bad faith, on the part of the Defendant "at the time of commencing of the bankruptcy." *Hageney*, 422 B.R. at 260. Even had the Plaintiff's allegations occurred before the filing or § 348(a) did

not apply, the facts accepted as true do not support a plausible inference that the Defendant acted in bad faith.

### III. The Plaintiff's Cause of Action Under § 707(b)(2)

Under § 707(b)(2), a presumption of abuse warranting dismissal arises when a debtor's monthly income surpasses the amount allowed under that section. *See* 11 U.S.C. § 707(b)(2). The extensive provisions of § 707(b)(2) calculating the allowable amount are referred to as the "means test" in practice. 6 COLLIER ON BANKRUPTCY 707.04 (16th ed. 2020). In its third cause of action, the Plaintiff alleges that the calculations provided by the Defendant are incorrect, and that the Defendant fails the means test, giving rise to a presumption of abuse. Pl.'s Compl. ¶ 55, ECF No. 1.

The Plaintiff alleges that, due to the foreclosure sale of the property, the Defendant lost the right to redeem his mortgage contract and no longer owes any secured debt under the mortgage contract. *Id.* at ¶¶ 36–7. The Plaintiff reasons that this requires the Plaintiff's claimed expense deductions to be reduced by $5,431.56. *Id.* at ¶¶ 38–9. This results in the Defendant having a monthly disposable income of $4,831.72. *Id.* The Defendant would then fail the means test establishing a presumption of abuse under § 707(b)(2).

<u>The Means Test in Converted Cases</u>

There is a split among bankruptcy courts as to whether the means test applies in cases converted to Chapter 7. The Eleventh Circuit, the Eighth Circuit Bankruptcy Appellate Panel, the Western District of Arkansas, and a majority of the bankruptcy courts hold that the means test does apply in converted cases. *See Pollitzer v. Gebhart*, 860 F.3d 1334 (11th Cir. 2017); *In re Chapman*, 447 B.R. 250 (B.A.P. 8th Cir. 2011); *In re Justice*, No. CIVIL 07-5231, 2008 WL 4368668 (W.D. Ark. Sept. 22, 2008); *In re Summerville*, 515 B.R. 651 (Bankr. M.D. Fla. 2014).

The rationale for holding so is that converted cases are still "filed under" Chapter 7 for the purposes of § 707(b)(2) as § 348(a) provides that a converted case is considered filed under the converted chapter, only with the original chapter petition date as the filing date. Garrett Pratt *et al*, *Harmonizing Conversion and the Means Test in Bankruptcy*, 3 BUS. ENTREPRENEURSHIP & TAX L. REV. 36, 65 (2019). These courts also suggest that not requiring the means test in converted cases would create a loophole allowing debtors who would not pass the means test to file for Chapter 13 and then immediately convert to Chapter 7. *Chapman*, 447 B.R. at 253.

A significant minority of courts, along with most of the academic literature, has adopted or advocated for the position that the means test does not apply in converted cases. *See*, *In re Dudley*, 405 B.R. 790 (Bankr. W.D. Va. 2009); *In re Fox*, 370 B.R. 639 (Bankr. D. N.J., 2007); *In re Ryder*, No. 07-40192 EDJ, 2008 WL 3845246 (Bankr. N.D. Cal. Aug. 18, 2008); Pratt *et al,* 3 BUS. ENTREPRENEURSHIP & TAX L. REV. at 39.

These courts have held that requiring a means test would contradict the plain meaning of the statute when referring to Chapter 7 and not referencing conversion. *Fox*, 370 B.R. at 647. The *Dudley* court reasoned that, should "filed" refer to the original filing date and not Chapter 7, the following phrase "under this chapter," is rendered superfluous. *Dudley*, 405 B.R. at 794. Requiring the means test in converted cases also creates contradictions within other sections of the Code. For example, § 348(b) does not include § 707(b) in the list of sections where an "order for relief" applies to the conversion of the case. *Fox*, 370 B.R. at 647. Section 342(d) requires the clerk to file notice to creditors within ten days of when the presumption of abuse arises. Pratt *et al,* 3 BUS. ENTREPRENEURSHIP & TAX L. REV. at 63. If the presumption of abuse in the means test applies to the converted cases, it would be impossible for the clerk to fulfill this duty. *Id.*

The minority courts hold that the means test should not apply in converted cases to avoid "an unreasonably unjust result for debtors." *In re Layton*, 480 B.R. 392, 397 (Bankr. M.D. Fla. 2012), *abrogated by Pollitzer*, 860 F.3d 1334. By requiring the means test in converted cases, many debtors who could not make a Chapter 13 plan work would also not be eligible for a discharge under Chapter 7. *Id.* at 399. These debtors would become so-called "phantom debtors," who, try as they might, would never be able to obtain the "fresh start" Congress provides through the bankruptcy system. Kathleen Murphy & Justin H. Dion, *"Means Test" or "Just A Mean Test": An Examination of the Requirement That Converted Chapter 7 Bankruptcy Debtors Comply with Amended Section 707(b)*, 16 Am. Bankr. Inst. L. Rev. 413, 446, 450 (2008).

The minority courts argue that the loophole debtors the majority of courts worry about could be denied a discharge under Chapter 7 for bad faith. *Fox*, 370 B.R. at 648. Although this is an important question for higher courts or Congress to resolve, in the instant case it is not necessary to answer whether a means test is required in converted cases as the Defendant would still pass the means test.

<u>The Presumption of Abuse</u>

Should the means test apply in this case, the Defendant's schedules do not create a presumption of abuse. At the time of the petition's filing, the mortgage debt was still "scheduled as contractually due" for the purposes of the Code. 11 U.S.C. § 707(b)(2)(A)(iii)(I). The Plaintiff argues that this court should hold the debt as no longer "scheduled as contractually due" given that the Defendant lacked the intent to pay the debt back, and that the Defendant lost the right to redeem the mortgage as a result of the foreclosure sale. Pl.'s Compl., ¶¶ 36–8. This second argument lacks merit, as the Defendant converted his Chapter 13 petition to a Chapter 7 on

September 26, 2019; while the foreclosure sale occurred almost four months later on December 17, 2019. Def.'s Mot. To Dismiss. Ex. B, 12, ECF No. 5-5; Pl.'s Compl. ¶¶ 6-7, ECF No. 1.

Regardless of the Defendant's intent to actually repay the debt, the amount was still "scheduled as contractually due" for purposes of the means test. Many bankruptcy courts, including several in this Circuit, apply the "snapshot approach" in these cases. *In re Longo*, 364 B.R. 161, 165 (Bankr. D. Conn. 2007); *In re Osborne*, 374 B.R. 68 (Bankr. W.D.N.Y. 2007); *In re Willette*, 395 B.R. 308 (Bankr. D. Vt. 2008). This means that "the Section 707(b)(2)(A)(iii) calculation is (in all relevant senses) intended to be a "snapshot" of the state of matters as of the petition date." *Longo*, 364 B.R. at 165. An intent to surrender the secured property does not change the fact that, under the secured debt instrument, the payments are still due. "A surrender of collateral proposed in a Statement of Intention filed with the petition does not change the fact that the relevant contractual secured debt still was extant as of the petition date." *Id.* at 165–6.

To regard the debt as not due would violate the Congressional intent behind § 707(b)(2)(A)(iii) and the Code's allowance of chapter conversions. This would place the Defendant and similarly situated debtors in the "phantom debtor" position, where they could neither afford to make a Chapter 13 plan work, nor surrender their property and start afresh in Chapter 7. In the narrower context of § 707(b)(2)(A)(iii), the statute requires a look at the debtor's situation at the time of filing, not post-petition events. *Longo*, 364 B.R. at 165 (quoting *In re Walker*, No. 05-15010-WHD, 2006 WL 1314125, at *6 (Bankr. N.D. Ga. May 1, 2006)).

The Eastern District of New York Bankruptcy Court declined to adopt the "snapshot approach" for Chapter 13 petitions in lieu of a "future-oriented approach." *In re Rahman*, 400 B.R. 362, 369 (Bankr. E.D.N.Y. 2009). In the Chapter 7 context, three other bankruptcy courts in the Second Circuit have adopted the snapshot approach, and for the reasons stated above this

Court should apply it here. As the secured debt was an allowable expense deduction, the Plaintiff

failed to sufficiently allege that the Defendant failed the means test and created a presumption of

abuse under § 707(b)(2). In fact, the Plaintiff agrees with this analysis. While arguing that intent

is still a relevant factor for whether payments are due, the Plaintiff states that this analysis is

"only successful to rebut § 707(b)(2), not § 707(b)(3)." Pl.'s Mem., at 16, ECF No. 7. The

Plaintiff goes on to say that it is "prepared to withdraw its' [sic] allegations relative to the

'presumption of abuse' Mean [sic] Test violation under § 707(b)(2)." *Id.*

### IV. Whether the Plaintiff Pled Under § 727 or Has Leave to Amend

The Plaintiff argues that its complaint stated causes of action for an objection to

discharge under § 727, besides its § 707 causes of action for dismissal. Pl.'s Mem., at 5, ECF No.

7. Further, the Plaintiff claims that leave to amend its complaint should be granted, or that its

complaint should be construed as a motion for dismissal under Federal Rule of Bankruptcy

Procedure 1017(e). *Id.* at 5, 7, 10.

The Plaintiff does title its complaint as "Complaint Objecting to Discharge of

Defendant," and mention § 727 in its jurisdictional statement and wherefore clause. Pl.'s Compl.,

ECF No. 1. The body of the complaint, including all of its allegations and causes of action,

makes no reference to § 727. The causes of action stated by the Plaintiff are causes of action for

dismissal under §§ 707(b)(2); (b)(3)(A); and (b)(3)(B), not objections to discharge under § 727.

A title and a wherefore clause do not constitute a pleading of a cause of action. "Defendants

should not have to guess which claims plaintiffs will ultimately attempt to prove." *In re

Bozeman*, 226 B.R. 627, 631 (B.A.P. 8th Cir. 1998). By pleading only § 707 causes of action and

then asking for those claims to be construed under § 727, the Plaintiff failed to give the

Defendants adequate notice of any § 727 claims. The Plaintiff is asking this court to construe its complaint as stating causes of action it did not plead.

Besides the fact that a § 727 claim involves more factors that the plaintiff pled, it also involves an intent to defraud a creditor, implicating the heightened pleading standards under Federal Rule of Civil Procedure 9(b). 11 U.S.C. § 727; FED. R. CIV. P. 9(b). As the objection to discharge under § 727 "impos[es] an extreme penalty for wrongdoing, [it] must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *In re Bub*, 516 B.R. 685, 693 (E.D.N.Y. 2014) (quoting *In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006)). Given that the Plaintiff did not plead any causes of action under § 727, only § 707, the Plaintiff's complaint will not be construed as stating a claim under § 727.

The Plaintiff's statement that its complaint should be construed as a motion for dismissal under § 707(b) pursuant to Rule 1017(e) is superfluous, as causes of action for dismissal under § 707(b) are what the Plaintiff pled, and what the analysis of this decision focused on. The Plaintiff will not be granted leave to amend its Complaint to include a cause of action under § 727. Federal Rule of Civil Procedure 15 provides that a court "should freely give leave when justice so requires." FED. R. CIV. P 15. The deadline to file an objection to discharge passed on January 13, 2020. Pl.'s Compl. ¶ 10. ECF No. 1. The Plaintiff pled causes of action that, taken as true, do not amount to plausible claims. The Plaintiff's pleadings violate Federal Rule of Bankruptcy Procedure 9011.

Under Rule 15(c), an amendment to a pleading can relate back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleadings." FED. R. CIV. P. 15(C). Even had the Plaintiff originally attempted to set out a claim under § 727, its

allegations are related to its cause of action under § 707. The requirements to sustain a § 727 claim would require different allegations than those the Plaintiff pled under § 707; namely, fraudulent conduct and an intent to defraud the creditor, rather than allegations of bad faith or a presumption of abuse that would show the Defendant's ability to fund a Chapter 13 repayment plan. As a claim under § 727 would arise out of a different "conduct, transaction, or occurrence" that those alleged, a § 727 claim would not relate back to the original pleading. In *In re Bozeman*, the plaintiffs sought to amend a complaint to include claims under § 727 and § 543. *Bozeman*, 226 B.R. at 629. The Eight Circuit Bankruptcy Appellate Panel affirmed denial of these amendments due to the fact that "issues of nondischargeability" were raised "[f]or the first time" and the amendments were the first time the plaintiffs sought "denial of a discharge pursuant to § 727(a)(3). *Id.* at 631. Relation back under Rule 15(c) allows for the amendment of claims absent prejudice to the defendant. *Bozeman*, 226 B.R. at 630 (citing *Fuller v. Marx*, 724 F.2d 717, 720 (8th Cir. 1984)). Rule 15 does not "contemplate depriving defendants of the protections of a statute of limitations;" or in this case, the deadline for objections to discharge. *Id.*

Granting leave to amend is at the discretion of the court, not a perfunctory right. *In re Mendel*, 351 B.R. 449, 458 (Bankr. S.D. Tex. 2006). An objection to discharge under § 727 is inherently separate from a cause of action for dismissal under § 707. The Plaintiff seeks to amend its complaint to allege a distinctly different cause of action than the three causes of action its complaint contains. In light of the inadequacy of the Plaintiff's original § 707 pleadings, the passing of the deadline for objections to discharge, and the Plaintiff's failure to plead any allegations under a § 727 cause of action in its original complaint, allowing the Plaintiff to

amend its complaint would be unfairly prejudicial to the Defendant. The interests of justice require that this Complaint be dismissed without leave to amend.

### V.  The Defendant's Request for Damages

The Defendant, in his Motion to Dismiss, requested the Court award damages in the form of attorney's fees. Def.'s Mot. To Dismiss 12, 32, ECF No. 5. Section 707(b)(5)(A) permits a court to award reasonable costs and attorney's fees incurred in contesting a motion to dismiss under § 707. *In re Smith*, 468 B.R. 235, 241 (Bankr. W.D. Ky. 2012). For damages to be awarded, § 707(b)(5)(A) requires that the motion be dismissed, and that the movant either violated Federal Rule of Bankruptcy Procedure 9011 or the filing attorney failed to perform a reasonable investigation and is attempting to coerce the debtor to waive a right guaranteed under Chapter 7. *Smith*, 468 B.R. at 241 (citing 11 U.S.C. § 707(b)(5)(A)). As there is no evidence that the Plaintiff attempted to coerce the debtor to waive any rights, this analysis for damages under § 707(b)(5)(A) will only look at the requirements of Rule 9011. Procedurally, the party seeking damages must give some notice to the opposing party in its responsive pleadings. *Smith*, 468 B.R. at 242. The Defendant provided adequate notice when it requested attorney's fees in its Motion to Dismiss. Def.'s Mot. To Dismiss 31–2, ECF No. 5.

Rule 9011 requires that a party's representations to the court not be "(1) for any improper purpose, (2) based upon frivolous legal arguments, (3) without adequate evidentiary support for its allegations, and (4) without a basis for denials of fact." *In re Ryan*, 411 B.R. 609, 615 (Bankr. N.D. Ill. 2009) (citing FED. R. BANKR.P. 9011(b) (1–4)). Examples of improper purposes under Rule 9011 include "to harass or to cause unnecessary delay or needless increase in the cost of litigation." FED. R. BANKR.P. 9011(b)(1).

As Rule 9011 is modeled after Federal Rule of Civil Procedure 11, the rules are treated

with the same standard. *Ryan*, 411 B.R. at 613. The Plaintiff's legal arguments are not frivolous,

and there are no issues of denials of fact, so an analysis under Rule 9011(b)(2) or (b)(4) is not

applicable here. These sanctions "are only to be granted sparingly, and should not be imposed

lightly." *Ryan*, 411 B.R. at 613 (quoting *Lefkovitz v. Wagner*, 219 F.R.D. 592, 592–93

(N.D.Ill.2004)).

Though seeking a dismissal of a Chapter 7 case for bad faith or a presumption of abuse is

a proper purpose, the Plaintiff's complaint creates unnecessary delay and seeks to deny the

Defendant the "fresh start" he may seek under the Bankruptcy Code. *Marrama v. Citizens Bank*

*of Massachusetts*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286

(1991)). The existence of an improper purpose under Rule 9011(b)(1) is a "subjective," "fact-

specific inquiry." *In re Collins*, 250 B.R. 645, 662 (Bankr. N.D. Ill. 2000). The Plaintiff intends

to dismiss the Defendant's Chapter 7 case and convert it to a Chapter 13, regardless of the fact

that the Defendant converted to Chapter 7 in the first place due to a failure to make a Chapter 13

plan work. The Plaintiff claims that the Defendant can fund the plan due to the foreclosure of his

former home, despite the fact that the Defendant now needs to pay rent so that his family may

live somewhere. Pl.'s Compl. ¶ 43, ECF No. 1.

In *Collins*, the Northern District of Illinois Bankruptcy Court found an improper purpose

where a debtor filed a bankruptcy petition to try a shed a single creditor that the debtor had been

involved with in years of losing litigation and had the ability to pay. *Collins*, 250 B.R. at 662.

Parallels can be drawn to the instant case. The Plaintiff is the Defendant's major creditor and for

years the parties have been involved in Loss Mitigation, the attempted short sale, the original

Chapter 13 plan, and now the converted Chapter 7. Loss Mitigation, the short sale, and the

Chapter 13 plan did not work, and the Plaintiff recovered the house. At this stage, attempting to

dismiss the Defendant's Chapter 7 based on claims without evidentiary support is unnecessarily

delaying this case.

      Many of the Plaintiff's allegations seem to be without evidentiary support. None of its

causes of actions fulfill the *Iqbal* standard of plausibility. The Plaintiff itself said that it would

consider withdrawing its § 707(b)(2) cause of action in light of the Defendant's argument. The

Plaintiff even "concedes that its allegations could have included more detail." Pl.'s Decl. in

Opp'n. ¶ 27, ECF No. 6. For example, one of the Plaintiff's causes of action involved allegations

of bad faith in the filing of the Defendant's schedules. Pl.'s Compl. ¶¶ 33–5. ECF No. 1. During

an investigation of the disputed amounts on the schedule, the Plaintiff should have been able to

see that, whether the security deposit was three thousand dollars or six thousand dollars, the

security deposit would have been exempt. The Plaintiff should have known that, even had the

disputed rental insurance and travel expenses be completely removed from the Defendant's

schedules, the Defendant would still not have been capable of funding a Chapter 13 plan. Rule

9011 requires that representations to the court contain evidentiary support. FED. R. BANKR.P.

9011(b)(3). If the Plaintiff "concedes that its allegations could have included more detail," see

Decl.¶ 27, Dkt No. 6, then the Plaintiff should have included more detail in its pleadings. The

Plaintiff's improper purpose of creating unnecessary delay and the dearth of evidentiary support

for its claims creates a violation of Rule 9011.

<u>**Conclusion**</u>

For the foregoing reasons, the Plaintiff's causes of action under 11 U.S.C. §§

707(b)(3)(B); 707(b)(3)(A); and 707(b)(2) are dismissed with prejudice. The Defendant's request

for damages in the form of attorney's fees is granted. Defendant is, hereby, instructed to provide

the Court with a proposed Order consistent with this Memorandum Decision.



/s/ Cecelia G. Morris

_____

**Dated: May 2, 2020**
**Poughkeepsie, New York**

**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**

Page **24** of **24**